## CARROLL and others *vs.* CONE.

Where money is deposited with a banker to the credit of another, the former becomes indebted to the latter, for the amount, payable on reasonable demand. But if the banker, by his words or conduct, denies the right of the depositor, as by placing the deposit to the credit of a third person, he thereby becomes presently liable to an action for the amount, without a formal demand.

So held where the banker, voluntarily, and without authority from the depositor, counted out the amount of the deposit, in bank notes and specie, and handed it to a sheriff holding an execution against the depositor, and the sheriff levied upon the money and sold it.

*Held, also,* that the money thus separated by the banker from the contents of his vault was his property, and not that of the depositor, and was not liable to levy under an execution against the latter.

Money being in the hands of the defendant, as a banker, belonging to a corporation, the officers of the corporation, in pursuance of authority given them by a resolution of the board of directors, transferred and assigned to the plaintiffs all claims and demands which the company might have, for such money, and authorized them to collect the same for their own benefit and use. *Held* that this was a valid transfer of all the rights of the corporation in respect to the money in deposit.

*Held, also,* that it was no objection to the validity of such assignment that it was dated and executed by one of the officers signing it, in anticipation of the resolution authorizing it; it not being executed by the other officer, or delivered, until after the passage of the resolution.

Where the board of directors of a rail road corporation, by resolution, directed that a claim held by the corporation should be transferred to certain persons specified, and that the "proper officers" should execute the requisite assignment; *it was held* that it was to be presumed, in the absence of proof to the contrary—at least in favor of third persons dealing with the company—that the president and secretary were the proper officers for that purpose.

Carroll *v.* Cone.

ON the 10th day of September, 1859, the Genesee Valley Rail Road Company leased their road to the Buffalo, New York and Erie Rail Road Company. By the terms of the lease $200 per month of the rents were appropriated to pay laborers for work before then performed in the construction of the road. On the 27th day of September, 1859, the board of directors of the Genesee Valley Rail Road Company, by resolution, pledged the moneys thus appropriated to pay laborers, to any person who would advance the money for that purpose. On the faith of this resolution, the plaintiffs advanced the sum of $300, which was appropriated to pay the laborers. The money was raised on a note made by the plaintiffs payable in New York, which the defendant discounted. The note fell due about the 3d day of December, 1859, when North, one of the plaintiffs and president of said company, for the purpose of paying the note, made his draft on the Buffalo, New York and Erie Rail Road Company, for $300, and delivered it to the defendant for collection, who shortly after received a draft for $298.50, the proceeds of the draft so delivered to him. In the meantime the note was paid in New York by the plaintiffs, or by another person for them. North directed the defendant to place the money to the credit of the said company, until he should see others of the plaintiffs, which he accordingly did. The sheriff of Livingston county had an execution against said rail road company with which he called on the defendant, and made a demand of the money. The defendant counted out $298 in bank bills and fifty cents in specie, and put the same in a package by itself, and the sheriff made a levy upon it, and indorsed his levy on the execution, and afterwards sold the same on the execution. In December, 1859, the plaintiffs demanded the money of the defendant, who refused to pay it. February 1, 1860, the directors of the Genesee Valley Rail Road Company, by resolution, directed an assignment to be made to the plaintiffs of all their claim to the money in the hands of Cone, and of any cause of action

against him; and that "the proper officers" execute the same. The assignment was dated January 11, but was not in fact executed till after February 1, 1860, but before the commencement of the action. The action was brought to recover the money from the defendant, and the plaintiffs recovered judgment for the money and interest. This judgment was affirmed at special term, and the defendant appealed.

*Scott Lord,* for the appellant.

*Hastings & Bingham,* for the respondents.

*By the Court,* JAMES C. SMITH, J.    I think this case was disposed of correctly, at the circuit. Even if it be assumed, in accordance with the claim made by the defendant, that the money received by him as the avails of the draft of the president of the Genesee Valley Rail Road Company, was the property of the company, and not of the plaintiffs, yet it seems to me clear that prior to the time of the commencement of this suit the company transferred all their rights in respect to the money to the plaintiffs.

The assignment to the plaintiffs, executed by the president and secretary of the company, in pursuance of authority conferred by a resolution of the board of directors, on the 1st of February, 1860, in terms transferred to the plaintiffs "all and any claims and demands which said company may have for the avails of said draft, so received by said Cone," and expressly authorized them "to collect the same for their own benefit and use."

It is insisted by the defendant that the assignment was unauthorized, as it appears to have been executed several days before the adoption of the resolution. This argument is based upon the circumstance that the assignment is dated on a day prior to that on which the resolution was passed; but it is answered by the fact that one of the officers did not sign the assignment until after the adoption of the resolu-

Carroll *v.* Cone.

tion, and as the signature of both was essential to its validity it could not have been delivered till after that time. The circumstance that it was dated and signed by the other officer in anticipation of the action of the directors, is of no consequence.

It is also urged by the defendant that it does not appear that the president and secretary were the "proper officers" to execute the assignment. But I think it is to be presumed, in the absence of proof to the contrary, at least in favor of third persons dealing with the company, that they were the proper officers for that purpose, and that they acted in pursuance of the authority conferred by the resolution.

There is no question but that the assignment, if properly executed, was sufficient to transfer to the plaintiff all the rights of the company against the defendant, in respect to the avails of the draft. The avails consisted of money, and that having been deposited with the defendant as a banker, to the credit of the company, he of course became thereby indebted to them for its amount, payable on reasonable demand. It does not appear that a demand of payment was made by the *company* before, or by the plaintiffs *after* the assignment; but if the defendant, by his words or conduct, denied the right of the depositor, as, for instance, by placing the deposit to the credit of a third person, he thereby became presently liable to an action for the amount, without a formal demand. I think that effect resulted from the defendant's agency in the transaction with the sheriff, shortly after the money was deposited, and before the assignment to the plaintiffs. That transaction was simply an attempt by the sheriff, by virtue of an execution which he held against the company, to levy upon the debt owing to them by the defendant; and to enable him to do so, the defendant, voluntarily and without authority from the company, counted out the amount of the debt, in bank bills and specie, and handed it to the sheriff.

In this, the defendant clearly did not act in obedience to any requirement of the law. The money thus separated by

him from the contents of his vault was his property, and not that of the company, and was not liable to levy under an execution against them. (6 *Cowen*, 494.)

He now insists, however, that the transaction was not an attempt to levy on the money, but was a payment by him upon the execution, under section 293 of the Code of Procedure. This claim is not supported by the evidence. It does not appear that a receipt was given by the sheriff, as required by the statute, or that the bank bills were indorsed on the execution, or in any manner applied to its payment; or that there was any agreement or understanding as to the amount for which they should be applied. On the contrary it clearly appears that the transaction was regarded by the parties as a levy. The sheriff testifies: "I went into the bank and inquired of the defendant if there was any money there, belonging to the company. He said there was $298.50. I told him I had an execution, and asked him for the money. He handed it to me and I *levied* on it, and afterwards *sold* it." The defendant's testimony is equally explicit on this point. He states in substance that when the sheriff said he had an execution and demanded the money, witness sent for the president of the company, and told him the money was *levied* on; that he set apart the money, and handed it to the sheriff, and that at the request of the sheriff he put a wrapper around it, *indorsed a memorandum of the levy upon it*, and placed it in his vault, where it remained till the sheriff called and took it away.

The idea that the parties intended an absolute *payment* is also repelled by the fact that the defendant received a bond of indemnity.

There is no ground for claiming that the plaintiffs are estopped by the conduct of Mr. North at the time of the attempted levy. In the view thus far taken of the case, the plaintiffs then had no interest in the matter. Mr. North was acting as the president of the company, and as such he objected to the transaction.

---

As the considerations above presented lead to the conclusion that the plaintiffs are entitled to recover, it is unnecessary to inquire whether the action may be maintained upon either of the other grounds discussed on the argument.

The order denying a new trial should be affirmed.

Ordered accordingly.

[MONROE GENERAL TERM, December 1, 1862. *Johnson, J. C. Smith* and *Welles,* Justices.]